ILENE J. LASHINSKY (AZ #3073)
United States Trustee
District of Arizona

JENNIFER A. GIAIMO (NY #2520005)
Trial Attorney
230 North First Ave., Suite 204
Phoenix, Arizona 85003-1706
Telephone: (602) 682-2600
Facsimile: (602) 514-7270

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOSTER J. RIZOPOULOS, | ) | No. 2:10-bk-01989-GBN |
| | ) | |
| Debtor. | ) | UNITED STATES TRUSTEE'S |
| | ) | OBJECTION TO DISCLOSURE |
| | ) | STATEMENT |

The United States Trustee, by and through the undersigned counsel, files this Objection to Disclosure Statement and respectfully shows the following:

MEMORANDUM OF POINTS AND AUTHORITIES

Debtor, Foster J. Rizopoulos ("Debtor"), filed a Chapter 11 bankruptcy petition in the above-captioned case on January 26, 2010. On June 29, 2010, Debtor filed his Disclosure Statement. *See* Docket #25. A hearing on Debtor's Disclosure Statement is set for August 30, 2010, at 9:30 a.m. *See* Docket #29. The United States Trustee now objects to the Debtor's Disclosure Statement for the reasons set forth below.

## Adequate Information

Disclosure statements are governed by 11 U.S.C. § 1125. The acceptance or rejection of a plan of reorganization may not be solicited until a disclosure statement containing adequate information is transmitted to claim holders. *See* 11 U.S.C. § 1125(b). Adequate information consists of information of a kind, and in sufficient detail, that essentially enables claimants to make an informed judgment about the plan. *See* 11 U.S.C. § 1125(a)(1). Courts have identified numerous guidelines for determining the adequacy of the disclosure statement. *See In re A.C. Williams Co.*, 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982); *see also In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988).

The *A.C. Williams* court identified the following ten items that should be set forth in the disclosure statement:

(1) the incidents that led to the filing of the Chapter 11;

(2) a description of available assets and their value;

(3) the anticipated future of the debtor;

(4) the source of information from the disclosure statement;

(5) a disclaimer;

(6) the present condition of the debtor while in Chapter 11;

(7) a list of claims scheduled;

(8) the estimated return to the creditors if liquidated;

(9) the accounting process used and the identity of the person who furnished the information; and

(10) future management of the debtor.

*See A.C. Williams*, 25 B.R. at 176.

As described more fully below, the Debtor's Disclosure Statement in this case is deficient insofar as it fails to provide adequate information and fails to include several of the required items identified in *A.C. Williams*.

<u>Inadequate Description of Available Assets</u>

Debtor's Disclosure Statement fails to contain an adequate description of available assets and their values. For example, Debtor's statement provides that "Debtor held approximately $13,000 in a JPMorgan Chase Bank account" at the time of the bankruptcy filing. *See* Disclosure Statement, at 5. Debtor's most recent monthly operating report reveals a cash balance in Debtor's debtor-in-possession accounts in the amount of $15,298.89, however. *See* Docket #24.

Likewise, rather than stating what specific assets are currently available, Debtor simply reiterates the assets that were previously listed in Debtor's Schedules at the time of the filing of the bankruptcy petition. Debtor is required to identify all currently available assets, not just state what was set forth in the Schedules, especially with respect to the currently available cash which is slightly greater than it was at the time of filing. Thus, Debtor's asset description should be amended to set forth the *currently* available cash, without simply reiterating what was stated several months ago in the Schedules.

### Insufficient Asset Valuations

Debtor's asset valuations are insufficient. Debtor fails to provide any information upon which the values attributed to his assets may be adjudged. Debtor claims that the values are based on his "best estimate and other factors such as the purchase price, comparable sales, and tax assessments." *See* Disclosure Statement, at 4. Debtor is required to either obtain valid appraisals of his assets or, at minimum, provide the specific data upon which the estimates are based so that creditors have sufficient information to determine whether those values are proper.

Debtor also fails to provide any information concerning his investment properties in Gilbert and Chandler, Arizona. Debtor should be required to state whether these properties are currently occupied by tenants, how long such tenancies, if any, are expected to last, the amount of the monthly rental, if any, that Debtor is receiving from the properties, the amount of anticipated future monthly rental income, and any other pertinent facts that bear upon the values of those assets.

### Inadequate Identification of Claims

Debtor fails to properly list all of the claims scheduled. Under "Administrative Expenses," Debtor simply states that "[t]here may be additional administrative expenses for related costs such as accountant, experts, and appraisal fees." *See* Disclosure Statement, at 6. Debtor proposes to pay all such claims in full in cash as of the effective date of the plan. *See* Disclosure Statement, at 9. At the very least, Debtor must specifically identify all of the current known holders of

administrative claims and the precise known amounts of such claims. Otherwise, it is impossible for creditors to adjudge whether Debtor's plan is in fact feasible.

The Disclosure Statement also fails to adequately identify all current unsecured claims. Debtor simply states that he anticipates that the total of Allowed Unsecured Claims will be $6,445.37. Yet, Debtor's Schedule F lists total unsecured debt of $5,632. This discrepancy alone requires that Debtor amend the statement to specifically itemize each of the outstanding unsecured general claims, including an identity of the claim holders and the specific amounts that are not in dispute and that will be deemed allowed.

Debtor's statement is also internally inconsistent insofar as the priority claims are concerned. At page 6, the only priority claim identified under the heading 'Priority Claims' is an Arizona Department of Revenue claim in the amount of $8,348. Then, at page 9, Debtor makes general reference to priority claims under 11 U.S.C. § 507(a)(7), providing for allowed unsecured claims of individuals arising from the deposit of money in connection with the lease or rental of real property. Debtor vaguely asserts that "to the extent the Debtor retains a property and that any tenant has provided the Debtor a deposit . . ." such claim will be recognized as a priority claim to the extent of $2,425. Debtor should at the very least state whether there are, in fact, such claims in existence in this case, and, if so, Debtor should be required to identify the claimants and the precise amounts owing on these claims.

### Treatment of Claims is Confusing

The treatment of the unsecured, general claims is ambiguous. Debtor states that all Allowed Unsecured Claims will be paid a pro-rata share from Debtor's Excess Cash Flow. *See* Disclosure Statement, at 16. Debtor's Schedule F lists three unsecured claims, all of which are designated as unliquidated. Based on that designation, the unsecured creditors may be understandably confused as to whether their claims will be "Allowed." Thus, Debtor must amend the Disclosure Statement to specifically identify those unsecured claims that are "Allowed."

The statement is also flawed insofar as Debtor makes contradictory statements regarding payment of the unsecured claims. Debtor states that the Allowed Unsecured Claims "will be paid a pro-rata share from Debtor's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtor's Liquidation Equity . . . after all senior Allowed claims have been paid." *See* Disclosure Statement, at 16. Debtor also says that "[a]ny Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive pro-rata distribution of the Excess Cash Flow until satisfied in full." *See* Disclosure Statement, at 16. These statements clearly imply that the Allowed Unsecured Claims will be paid in full.

Debtor goes on to say, however, that no Liquidation Equity exists for the benefit of general unsecured claims and that he has no excess cash flow. *See* Disclosure Statement, at 17-18. Nevertheless, Debtor then states that "Debtor is preserving his Liquidation Equity of $13,120.00 for the benefit of their [sic] general

unsecured creditors so that they will receive a distribution under the Plan." *See id.* Later in the statement, Debtor states "creditors should note that the amount to be disbursed to satisfy § 1129(a)(15) of the Bankruptcy Code to several Unsecured Claims is $0." And, yet again, following that statement is a claim that Debtor will pay $13,120 to general, unsecured claims.[1]

The foregoing contradictory statements are, at best, confusing and, at worst, misleading. The suggestion that Debtor will pay *any* amount of the Allowed Unsecured Claims is undermined by Debtor's statement that no liquidation equity exists for those claims and that he has zero monthly disposable income with which to pay those claims. In order for creditors to be properly and adequately informed of the impact that this plan will have on the payment of their claims, Debtor is required to cure these discrepancies and seeming contradictions and to specify in a concise, clearly understandable manner, the precise claims that will be paid, in what amounts, and over what time period, and to specify the precise claims that will be disputed or paid nothing.

<u>Inadequate Liquidation Analysis</u>

The Disclosure Statement fails to include a proper liquidation analysis. Included within the Disclosure Statement is a chart that sets forth the estimated market and liquidation values of Debtor's assets. *See* Disclosure Statement, at 16-17. On its face, this chart is clearly inaccurate, as the bank account is listed as having a $13,000 value despite the fact that there is over $15,000 currently in that

---

[1] Notably, the total amount of general, unsecured claims listed in Schedule F is $5,632.

account according to the most recent monthly operating report. Additionally, there is no indication as to how the various values were determined. The statement says simply that such analysis was prepared based on "what the Debtors [sic] believe creditors would receive in the event of liquidation." *See* Disclosure Statement, at 16. Debtor fails to specify the accounting process used or the identity of the persons, if any, who furnished information on which the values are attributed, as required by *A.C. Williams*. Nor does Debtor, as required by *A.C. Williams*, provide an estimated return to the creditors if the assets were liquidated. Thus, in order for creditors to be provided an adequate and accurate liquidation analysis, Debtor should be required to amend the statement to correct the deficiencies identified herein.

<u>Inadequate Description of Debtor's Income and Financial Condition</u>

Debtor's statement is also deficient under *A.C. Williams* because Debtor fails to describe the Debtor's current condition in bankruptcy or to provide sufficient information from which to assess the Debtor's anticipated future. Debtor merely states that he is a senior consultant with Currie and Brown, Inc. *See* Disclosure Statement, at 3. There is no statement of the amount of Debtor's current earnings and no projection or estimation of Debtor's future income. Nor does Debtor address the extent, if any, to which he is earning income from his two investment properties or the extent, if any, to which he anticipates earning income from those properties over the course of the plan. These are important facts, especially in light of Debtor's proposal to retain ownership of all three properties in which he has zero equity.

Notably, Debtor's Schedules fail to elucidate these matters. For example, Debtor's Schedule I sets forth a deduction of $1,345 deduction for voluntary 401k contributions. It is not at all apparent that this deduction is reasonable or necessary and Debtor provides no other information to otherwise explain or justify such a deduction. Thus, Schedule I raises more questions than it answers insofar as Debtor's true income is concerned. As such, Debtor should be required to specify in the Disclosure Statement itself – not solely by reference to Schedules I and J – what Debtor's total monthly income is from his job, from his investment properties, and from any other source so that creditors may assess the Debtor's current and anticipated financial condition.

In addition to accurately setting forth Debtor's total income, Debtor must also state specifically what his projected disposable income is. Projected disposable income is defined as current monthly income less amounts reasonably necessary for the Debtor's and dependents' support and maintenance and for charitable contributions. *See* 11 U.S.C. §§ 1129(a)(15)(B) and 1325(b)(2). Debtor must provide a precise projected disposable income analysis and specifically state what the Debtor's projected disposable income is in addition to providing specific factual information from which creditors may evaluate the propriety of Debtor's projected disposable income.

WHEREFORE the United States Trustee respectfully requests that this Court sustain this Objection to the Disclosure Statement, direct Debtor to amend

| | |
|---|---|
| 1 | the Disclosure Statement to provide adequate information under 11 U.S.C. § 1125, |
| 2 | and grant any other relief that the Court deems just and appropriate. |
| 3 | RESPECTFULLY SUBMITTED this 16th day of August, 2010. |

ILENE J. LASHINSKY
United States Trustee
District of Arizona

/s/ JAG (NY #2520005)
_____
JENNIFER A. GIAIMO
Trial Attorney

Copies of the foregoing will be served via
first class mail on the 16th day of
August, 2010, on the parties below:

Nasser U. Abujbarah
The Law Offices of Nasser U. Abujbarah
7025 E. McDowell Rd.
Suite 9
Scottsdale, AZ 85257

/s/ Connie Hoover
_____