**Nasser U. Abujbarah (026182)**
The Law Offices of Nasser U. Abujbarah
7025 E. McDowell Road, Ste. 9
Scottsdale, Arizona 85257
Office: (480) 776-6846
Fax: (480) 776-6847
Email: Nasser@nualegal.com
***Attorney for Debtor***

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Foster J. Rizopoulos,<br><br>     Debtor. | ) In Proceedings Under<br>)<br>) Chapter 11<br>)<br>) Case No.: 2:10-bk-1989-GBN<br>)<br>) **DEBTOR'S FIRST DISCLOSURE**<br>) **STATEMENT**<br>)<br>)<br>) |

## I.  INTRODUCTION

This document is the disclosure statement of the Debtor, Foster J. Rizopoulos ("Debtor"), in the above-entitled Chapter 11 bankruptcy proceeding.  This Disclosure Statement is submitted by the Debtor(s) pursuant to 11 U.S.C. § 1125.

11 U.S.C. § 1125(b) prohibits the solicitation of acceptances or rejections of a plan of reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding the Debtor's Plan of Reorganization ("Plan) a copy of which is attached hereto and incorporated herein as Exhibit "A".

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtors, their assets and liabilities, have been prepared from

information submitted by the Debtor and his retained professionals. The Debtor and other professional employed by the Debtor have utilized all relevant, non-privileged information provided by the Debtor in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtor's proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly representative.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. § 1125(b). Once approved, the Disclosure Statement will be distributed with the Debtor's proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtor's Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under § 1124 of the Bankruptcy Code. An impaired class of claims is deemed to have accepted the Plan if at least two-thirds in amount of those claims who vote and more than one-half in number of those claims who vote have accepted the Plan. An impaired class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two-thirds in amount of the allowed interests who vote on the Plan.

Even if a number of classes of creditors do not accept the Plan, the Plan can be confirmed in § 1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. This is referred to as the "cram down" provision. The failure of each class to accept the Plan could very well result in a conversion of this Case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing its collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a class has accepted the Plan.

## II. DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

**Excess Cash Flow-**Excess cash flow has been set out in a separate exhibit. That exhibit sets out the excess monies Debtor has at the end of each month after paying his secured obligations and his living expenses. The budget sets out payments of $300 towards credit cards. That number was an estimate based on Debtors unsecured liability. However, as discussed in more detail in the Disposable Income analysis, Debtor will be able to fulfill the entire pre-petition unsecured debt in three months. Since Debtor has not made such payments since the pendency of the bankruptcy, Debtor will be able to fulfill that obligation in one payment at the time of confirmation. Excess cash flow is what will be used to fund the plan. As the exhibit shows, that is a compilation of Debtors' income and rental income but the majority of the money is derived from Debtors' W2 income, as laid out in the separate exhibit.

## III. THE DEBTOR AND EVENTS PRECIPITATING THE CHAPTER 11

The Debtor is an unmarried man who shares his time between Oregon (his place of work) and Arizona; the Debtor spends the majority of his time in Oregon and as such all the properties in Arizona are occupied renters. The Debtor leases an apartment in Oregon on a month to month tenancy. The lease has not been assumed in Bankruptcy Court. Debtor pays $750 in rent a month for his apartment in Oregon. Debtor owns three investments properties that are described in this

Disclosure Statement; Debtor does not live in any of the homes, even when he visits he stays with family; they are strictly investment properties.

Mr. Rizopoulos is currently employed as a Senior Consultant with Currie and Brown, Inc. He has been employed with Currie and Brown, Inc. for approximately three years. Those W2 wages are the primary source of income for the Debtor.

Over the past ten years the Debtor has derived a considerable portion of his income from real estate investments in Maricopa County, Arizona. The current investments consist of three single-family residences.

The Debtor was previously very successful in renting his investment properties. As the real estate market declined, the Debtor's ability to have positive cash flow on the rental properties declined. He was able to continue to service the debt as the market continued to decline but the prolonged decline depleted the Debtor's reserves. The Debtor began negotiations with his various lenders on the rental properties to modify loan terms so that the rentals could remain positive in their cash flow. Some lenders were willing to work with the Debtor, many were not. Ultimately as the real estate market crashed, the Debtor's ability to obtain loan modifications and continue to service the debt became a serious problem. Given the downturn of the real estate Market, it is potential that all of the rental properties are worth less than the amounts owing on the loans and the rental income is not sufficient to cover the secured debt without obtaining modifications. The Debtor's Plan seeks the necessary modifications so that all of the rental properties will cash flow while servicing the modified debt.

Due to the current real estate market, the Debtor's inability to convince all of their secured creditors to agree to loan modifications without the assistance of a bankruptcy proceeding, and the potential tax ramifications if the Debtor did not file for bankruptcy protection, the Debtors are seeking protection under the Chapter 11 Bankruptcy Code.

**IV. SIGNIFICANT EVENTS DURING THE CHAPTER 11**

A. <u>Administrative Proceedings</u>

The Debtor filed his Petition for Relief under Chapter 11 on January 26, 2010. The meeting of creditors was held on March 2, 2010.

B. Retention of Professionals

The Debtors retained Nasser U. Abujbarah to act as their bankruptcy counsel. The Court signed an Order approving the retention on February 11, 2010.

C. Appointment of Unsecured Creditors Committee

On March 3, 2010, The United States Trustee's Office filed a statement concerning its inability to appoint a committee of unsecured creditors.

**V. DESCRIPTION OF ASSETS AND LIABILITIES OF THE DEBTORS**

The Debtors have not obtained recent appraisals of any of their assets. The values described to the assets below are based on the Debtors' best estimate and other factors such as the purchase price, comparable sales, and tax assessments.

A. Real Property

a. 751 West Citrus Way, Chandler, Arizona 85248 - Residence

The Debtor owns a single-family residence located at 751 West Citrus Way, Chandler, Arizona. The Debtor has listed the value of the property at $185,000.00 in his Schedule A based upon his knowledge of properties in the area and comparative sales. The Debtor owns the property, however, U.S. Bank holds a first position lien on the property. The Debtor does not claim a $150,000.00 homestead exemption in the property.

b. 2033 East Willow Road, Gilbert, Arizona 85296 - Investment Property

The Debtor owns a single-family residence located at 2033 East Willow Road, Gilbert, Arizona. The Debtor believes the current value of the property is $138,000.00 based upon his knowledge of properties in the area and comparative sales. Americas Servicing Company holds a first position Deed of Trust on the property. Americas Servicing Company is owed approximately $183,637.61. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the property for the benefit of the bankruptcy estate.

c. 2441 West Indigo Drive, Chandler, Arizona 85248

The Debtor owns a single-family residence located at 2441 West Indigo Drive, Chandler, Arizona. The Debtor believes the current value of the property is $166,100.00 based upon his knowledge of properties in the area and comparative sales. BAC Home Loans

Servicing holds a first position Deed of Trust on the property. BAC Home Loans Servicing is owed approximately $224,897.00. When possible costs of sale are factored in, the Debtor does not believe that any equity exists in the property for the benefit of the bankruptcy estate.

    B.   <u>Personal Property</u>

        a.  <u>Bank Accounts</u>

<span style="color:red">The Debtor held approximately $23,895.00 in his Debtor-In-Possession bank account at the time of the last monthly operating report..</span>

        b.  <u>Miscellaneous Household Goods and Furnishings</u>

In his Schedule B, the Debtor listed approximately $1,500.00 in miscellaneous household goods and furnishings for his residence.

        c.  <u>Miscellaneous Books, Pictures, and Hobby Equipment</u>

The Debtor listed approximately $500.00 in miscellaneous books, pictures, CDs/DVDs in his Schedule B.

The Debtor listed a camera and hoppy equipment in the amount of $200.00.

        d.  <u>Wearing Apparel/Jewelry</u>

The Debtor listed approximately $600.00 for miscellaneous wearing apparel and jewelry valued at approximately $800.00.

        e.  <u>Interests in 401k</u>

The Debtor has a 401k valued at approximately $88,000.00 The 401k is exempt.

        f.  <u>Vehicles</u>

The Debtor listed a 1997 Toyota 4Runner valued at approximately $2,500.00.

    C.   <u>Exemptions</u>

The Debtors have listed various exemptions for real and personal property in Schedule C. At this time no objections to exemptions have been filed.

    D.   <u>Financial Reports</u>

The Debtors' monthly operating reports are current and copies can be obtained from the Court's electronic docket or from the Debtors' counsel. The reports indicate significant payments to one unsecured creditor. The Debtor has vowed to discontinue making such payments will

reconcile the priority payments with complete payments to the other unsecured creditors at the time of the petition.

E.    <u>Administrative Expenses</u>

The Debtor anticipates his administrative expenses will consist primarily of attorney's fees for Mr. Abujbarah. Mr. Abujbarah received $8,500 from the Debtor. Mr. Abujbarah applied $1,039.00 for the filing fee for the Chapter 11 bankruptcy proceeding of the Debtor and $5000 for pre-petition services performed. Mr. Abujbarah estimates its remaining fees will be in the range of $2500, depending on creditor activity in this case, and believes that it should be paid out of the Debtor's pos-petition earnings. There may be additional administrative expenses for related costs such as accountant, experts and appraisal fees. <span style="color:red">These fees have been noticed out to all creditors through a 2016(b) verification.</span>

F.    <u>Priority Claims</u>

The Internal Revenue Service (IRS) has not filed a Proof of Claim, and the Debtor does not anticipate that they have any liability to the IRS. The Arizona Department of Revenue (ADOR) filed a priority Proof of Claim in the amount of $8,348.00 for estimated taxes.

G.    <u>Secured Claims</u>

Americas Servicing Company filed a secured proof of claim in the amount of $183,637.61 related to real property located at 2033 East Willow Road, Gilbert, Arizona.

BAC Home Loans Servicing filed a secured proof of claim in the amount of $224,897.00 related to real property located at 2441 West Indigo Drive, Chandler, Arizona.

BAC Home Loans Servicing filed a secured proof of claim in the amount of $57.233.00 related to real property located at 2441 West Indigo Drive, Chandler, Arizona.

CitiMortgage, Inc. filed a secured proof of claim in the amount of $47,067.23 related to real property located at 751 West Citrus Way, Chandler, Arizona.

Green Tree Servicing, LLC filed a secured proof of claim in the amount of $49,808.69 related to real property located at 2033 East Willow Wick Road, Gilbert, Arizona.

US Bank filed a secured proof of claim in the amount of $195,046.24 related to real property located at 751 West Citrus Way, Chandler, Arizona.

### H. Domestic Support Obligations

The Debtors have no domestic support obligations.

### I. Unsecured Claims

The Debtor anticipates the total amount of Allowed Unsecured Claims in this Class will be approximately $6,445.37 owed for lines of credit, personal guarantees, and credit card purchases.

At the time of filing, Debtor had approximately $6455.57 in unsecured claims. Based on the valuations in this plan and agreements reached with secured creditors, the additional unsecured amounts are:

ASC claim, when bifurcated, will create an additional $45,637.61 unsecured claim. (Based on plan figures found on page 13 of this Disclosure Statement).

BAC claim, when bifurcated, will create an additional $24,897 unsecured claim. (Debtor has reached an agreement with BAC to revalue the property at $200,000).

US Bank claim, when bifurcated, will create an additional $10,046.24 unsecured claim. (Based on plan figures found on page 17 of this Disclosure Statement).

BAC claim (second DOT on Indigo property) will be stripped off Debtors' property, creating a $57,233 unsecured claim.

Citi Mortgage claim (second DOT on Citrus Way property) will be stripped off Debtors' property, creating a $47,067.23 unsecured claim.

Green Tree claim (second DOT on Willow Road property) will be stripped off Debtors' property, creating a $49,808.69 unsecured claim.

TOTAL UNSECURED DEBT AMOUNT IS $241,145.34.

Debtor does not dispute the validity of any of the unsecured claims and as such all shall be deemed allowed.

**CLASSIFICATION**

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THE PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTOR. AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**A.      Priority Claims: Class 1**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims Under 11 U.S.C. § 507(a)(8) (Tax Claims).

**B.      Secured Claims: Class 2**

Class 2-A consists of Maricopa County related to real property taxes on the Debtor's real properties in Maricopa County.

Class 2-B consists of the Allowed Secured Claim of Americas Servicing Company related to real property located at 2033 E. Willow Wick Road, Gilbert, Arizona.

Class 2-C consists of the Allowed Secured Claim of BAC Home Loans Servicing related to real property located at 2441 West Indigo Drive, Chandler, Arizona.

Class 2-D consists of the Allowed Secured Claim of BAC Home Loans Servicing related to real property located at 2441 West Indigo Drive, Chandler, Arizona.

Class 2-E consists of the Allowed Secured Claim of CitiMortgage, Inc. related to real property located at 751 West Indigo Drive, Chandler, Arizona.

Class 2-F consists of the Allowed Secured Claim of Green Tree Servicing, LLC related to real property located at 2033 East Willow Wick Road, Gilbert, Arizona.

Class 2-G consists of the Allowed Secured Claim of U.S. Bank related to real property located at 751 West Citrus Way, Chandler, Arizona.

**C.    General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtor.

**D.    Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtor.

**VI. IMPAIRMENT OF CLASSES**

Classes 1-A, 1-B, 1-C, 2-A, and 2-G are unimpaired under the Plan. All other classes are impaired, as that term is defined in 11 U.S.C. § 1124.

**VII.    TREATMENT OF CLASSES**

**A.  Priority Claims: Class 1**

**a.   Administrative Claims:1-A**

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(2) (Administrative Claims) related to the Debtor. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for the Debtor that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 0% until paid in full.

**b.   Tenant Claims: 1-B**

This class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(7) relating to tenant security deposits, which includes: unsecured claims of individuals, to the extent of $2,425.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property for the personal, family, or household use of such individuals, that were not delivered or provided. To the extent

the Debtor retains a property and that any tenant has provided the Debtor a deposit relating to the lease of any real property that falls within the $2,425.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtor shall perform and act within the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds $2,425.00 dollar limitation or definitional limitations set forth in 11 U.S.C. § 507(a)(7) shall be treated as a general unsecured claim under Class 3-A.

The following is a tenant summary

| Property | Name of Tenant | Monthly Rent Amount | Security Deposit | Lease End Date |
|---|---|---|---|---|
| 2441 West Indigo | Karin and Nancy Back | $1225 | $1225 | 7/31/2011 |
| 2033 East Willow Wick | Merline Lee | $1095 | $1095 | 6/30/2011 |
| 751 West Citrus Way | Lisa Green and Troy Gallos | $1450 | $1450 | 6/30/2011 |

Lease agreements are available upon request. The security deposits will be preserved by the Debtor.

**c. Tax Claims: 1-C**

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8)-tax claims.

The Internal Revenue Service (IRS) has not yet filed a proof of claim. The Debtor anticipates he will not have any tax liability to the IRS. In the event the IRS does file a proof of claim, and to the extent there is a dispute between the Debtor and the IRS as to the amount of the IRS's priority claim, the Debtor will file an objection to the proof of claim.

The Arizona Department of Revenue (ADOR) filed a priority Proof of Claim in the amount of $8,348.00 for estimated taxes. The Debtors are in the process of preparing and

filing their 2008 tax returns and will file the same. At that time, the ADOR will amend its proof of claim as it deems appropriate. To the extent there is a dispute between the Debtor and the ADOR as to the amount of the ADOR's priority claim, the Debtor will file an objection to the proof of claim.

Any remaining balance owing to the IRS and ADOR after offsetting any tax refunds, for any years, shall be paid a pro-rata amount of the Debtor's Excess Cash Flow (a cash flow analysis has been provided to the Court and creditors), in monthly payments, over a period of five (5) years from the Petition Date. Any claims of the IRS or ADOR remaining unpaid will be deemed satisfied and discharged.

The failure of the Debtor's to comply with the provisions of the Plan concerning liability owed to the IRS and ADOR that includes, but is not limited to, the failure to make the full and timely payments provided for herein, shall constitute a default of the Plan. If the Debtor fails to cure the default within twenty (20) days after written notice of the default from the IRS or ADOR or their agents, the entire balance due to the IRS or ADOR shall be immediately due and owing. Further, in the event of a default, the IRS or ADOR may enforce its claim, exercise any and all rights and remedies available under applicable non-bankruptcy law that includes, but is not limited to, collection procedures, and any other relief as may be deemed appropriate by the Bankruptcy Court.

**B. Secured Claims: Class 2**

    **a. Maricopa County: Class 2-A**

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Debtors' properties located in Maricopa County. Maricopa County will retain its liens on the properties and will be paid its Allowed Secured Claim as follows:

The Debtor's Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and this the Debtor will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtor will

execute a deed in lieu of foreclosure to expedite this transfer. As to each property where the Debtor retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due, (c) the Reorganized Debtor shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

### b. Americas Servicing Company: Class 2-B

This class consists of the Allowed Secured Claim held by Americas Servicing Company related to Debtor's real property located at 2033 W. Willow Wick Road, Gilbert, Arizona. The Debtor anticipates he will reach a stipulation with Americas servicing Company as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Debtor asserts that Americas Servicing Company is in first position on the property junior only to real property taxes. The Debtor believes the current fair market value of the property is approximately $138,000.00 based upon his knowledge of similar properties in the surrounding areas and comparative sales. Americas Servicing Company filed a proof of claim in the amount of $183,637.61. Americas Servicing Company shall be allowed at the value of the property minus all senior secured claims. As a result, Americas Servicing Company's Allowed Secured Claim is $138,000.00. This obligation will be re-amortized at the Allowed Secured Claim and paid in interest only payments at 4% for three (3) years, and thereafter paid in equal monthly payments of principal and interest,

with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty (30) years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment for real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Americas Servicing Company shall release its lien on the property once its Allowed Secured Claim has been paid. The Debtor may sell the property t any time without penalty so long as the balance owing to Americas Servicing Company is satisfied out of the sale proceeds. The balance of Americas Servicing Company's Allowed Secured Claim shall be treated in accordance with Class 3-A.

      **c. BAC Home Loans Servicing: Class 2-C**

      This class consists of the Allowed Secured Claim held by BAC Home Loans Servicing related to Debtor's real property located at 2441 W Indigo Dr., Chandler, Arizona. The Debtor anticipates he will reach a stipulation with BAC Home Loans Servicing as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Debtor asserts that BAC Home Loans Servicing is in first position on the property junior only to real property taxes. The Debtor believes the current fair market value of the property is approximately $166,100.00 based upon his knowledge of similar properties in the surrounding areas and comparative sales. BAC Home Loans Servicing filed a proof of claim in the amount of $224,897.00. BAC Home Loans Servicing shall be allowed at the value of the property minus all senior secured claims. As a result, Americas Servicing Company's Allowed Secured Claim is $166,100.00. This obligation will be re-amortized at the Allowed Secured Claim and paid in interest only payments at 4% for three (3) years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty (30) years. Further, the funds necessary for the escrow account for real property taxes and insurance

will be added to the monthly payments, the escrow account will remain in place for the payment for real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. BAC Home Loans Servicing shall release its lien on the property once its Allowed Secured Claim has been paid. The Debtor may sell the property t any time without penalty so long as the balance owing to BAC Home Loans Servicing is satisfied out of the sale proceeds. The balance of BAC Home Loans Servicing's Allowed Secured Claim shall be treated in accordance with Class 3-A.

**d. BAC Home Loans Servicing: Class 2-D**

This class consists of the Allowed Secured Claim of BAC Home Loans Servicing related to Debtor's real property located at 2441 W. Indigo Dr., Chandler, Arizona. The Debtor anticipates he will reach a stipulation with BAC Home Loans Servicing as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that BAC Home Loans Servicing is in second position on the property junior to real property taxes and BAC Home Loans Servicing's first position lien. Debtor believes the current value of the property is approximately $166,100.00. BAC Home Loans Servicing filed a proof of claim in the amount of $57,233.00. BAC Home Loans Servicing's Allowed Secured Claim shall be allowed at the value of the property minus all senior secured claims. As a result, BAC Home Loans Servicing's Allowed Secured Claim is $0 ($166,100 value minus $166,100 to BAC Home Loans Servicing first position lien). BAC Home Loans Servicing shall immediately release its lien on the property on the Effective Date. The balance of BAC Home Loans Servicing's Allowed Secured Claim shall be treated in accordance with Class 3-A.

**e. CitiMortgage, Inc.: Class 2-E**

This class consists of the Allowed Secured Claim of CitiMortgage, Inc. related to Debtor's real property located at 751 W. Citrus Way, Chandler, Arizona. The Debtor anticipates

he will reach a stipulation with CitiMortgage, Inc. as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that CitiMortgage, Inc. is in second position on the property junior to real property taxes and US Bank's first position lien. Debtor believes the current value of the property is approximately $185,000.00. CitiMortgage, Inc. filed a proof of claim in the amount of $47,067.23. CitiMortgage's Allowed Secured Claim shall be allowed at the value of the property minus all senior secured claims. As a result, CitiMortgage's Allowed Secured Claim is $0 ($185,100 value minus $195,046.24 to US Bank first position lien). CitiMortgage, Inc. shall immediately release its lien on the property on the Effective Date. The balance of CitiMortgage's Allowed Secured Claim shall be treated in accordance with Class 3-A.

### f. Green Tree Servicing, LLC: Class 2-F

This class consists of the Allowed Secured Claim of Green Tree Servicing related to Debtor's real property located at 2033 E. Willow Wick Road, Chandler, Arizona. The Debtor anticipates he will reach a stipulation with Green Tree Servicing as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Green Tree Servicing is in second position on the property junior to real property taxes and Americas Servicing Company's first position lien. Debtor believes the current value of the property is approximately $138,000.00. Green Tree Servicing filed a proof of claim in the amount of $49,808.69. Green Tree Servicing's Allowed Secured Claim shall be allowed at the value of the property minus all senior secured claims. As a result, Green Tree Servicing's Allowed Secured Claim is $0 ($138,00 value minus $138,000 to Americas Servicing Company first position lien). Green Tree Servicing shall immediately release its lien on the property on the Effective Date. The balance of Green Tree Servicing's Allowed Secured Claim shall be treated in accordance with Class 3-A.

**g. US Bank: Class 2-G**

This class consists of the Allowed Secured Claim held by US Bank related to Debtor's real property located at 751 W. Citrus Way, Chandler, Arizona. The Debtor anticipates he will reach a stipulation with US Bank as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Debtor asserts that US Bank is in first position on the property junior only to real property taxes. The Debtor believes the current fair market value of the property is approximately $185,000.00 based upon his knowledge of similar properties in the surrounding areas and comparative sales. US Bank filed a proof of claim in the amount of $195,046.24. US Bank's Allowed Secured Claim shall be $195,046.24. This obligation will be re-amortized at the Allowed Secured Claim and paid in interest only payments at 4% for three (3) years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty (30) years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment for real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. US Bank shall release its lien on the property once its Allowed Secured Claim has been paid. The Debtor may sell the property at any time without penalty so long as the balance owing to US Bank is satisfied out of the sale proceeds. The balance of US Bank's Allowed Secured Claim shall be treated in accordance with Class 3-A.

**C. Unsecured Claims: Class 3**

**a. General Unsecured Claims: Class 3-A**

Class 3-A consists of the Allowed Unsecured Claims of Creditors. Class 3-A Creditors shall be paid a pro-rata share from the Debtor's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtor's Liquidation Equity (as calculated

in the Debtor's Disclosure Statement), after all senior Allowed Claims have been paid in accordance with the terms of the Plan. Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow until satisfied in full.

Debtor has made preferential payments to Citi for an unsecured credit card. These payments, while for post-petition charges, are improper and to remedy the situation Debtor has committed to pay his pre-petition unsecured creditors in full.

**D. Debtor's Interest: Class 4**

**a. Debtor's Interest: Class 4-A**

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtor shall retain his interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

**VIII. LIQUIDATION ANALYSIS**

The following is a Liquidation Analysis indicating what the Debtors believe creditors would receive in the event of liquidation. The figures for "market value" and "liquidation value" are the Debtors' best estimate on what these assets are worth on a market or liquidation basis.

| Assets | Market Value | Liquidation Value | Exemption | Secured Claim | Equity |
|---|---|---|---|---|---|
| 751 W. Citrus Way | $185,000 | $166,500 | $0 | $195,046.24 | $0 |
| 2033 E. Willow Wick Rd. | $138,000 | $124,200 | $0 | $183,637.61 | $0 |
| 2441 W. Indigo Dr. | $166,100 | $149,490 | $0 | $224,897.00 | $0 |
| JPMorgan Chase Bank Account | $23,895 | $23,895 | $150 | $0 | $23,745 |
| Household Furniture | $1,500 | $1,350 | $4,000 | $0 | $0 |
| Misc. books, pictures and other art objects | $500 | $450 | $250 | $0 | $200 |
| Clothing | $600 | $540 | $500 | $0 | $40 |
| Jewelry | $800 | $720 | $1,000 | $0 | $0 |

| | | | | | |
|---|---|---|---|---|---|
| Camera | $200 | $180 | $0 | $180 | $180 |
| 401k | $88,000 | $88,000 | $88,000 | $0 | $0 |
| 1997 Toyota 4Runner | $2,500 | $2,250 | $5,000 | $0 | $0 |
| **TOTAL** | | | | | $24,165 |

This chart lists the accurate secured claims, the schedules were the Debtors most highly educated approximation. If the Court or the United States Trustee wishes, Debtor will amend his schedules.

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability, which could be associated with the liquidation. This would lessen the recovery to creditors. This analysis is provided for informational purposes only, given that the Debtor's Plan does not contemplate a liquidation in this fashion. The importance of the analysis is to illustrate that even if the Debtor's estate was liquidated, values would lessen significantly and creditors would not be paid quickly.

In order to satisfy 11 USC 1129(a)(15) Debtor will have to provide his disposable income over the fifteen year length of the plan. This would total payments of $129,496.20 in payments to general unsecured creditors. In order to ensure Debtor can satisfy this obligation, as many things will change and the 9 month pro-forma budget is subject to many unknown factors, such as tenant changes and employment changes. As such, Debtor proposes to pay the $129,496.20 over a term of 15 years.

If Debtor were to file Chapter 7, general unsecured creditors would receive the liquidation equity of $24,165. Debtors' Plan calls for payments to unsecured creditors in the amount of $129,496.20; thus satisfying the Best Interest of Creditors Test.

Beginning the first day of the month after confirmation, general unsecured creditors shall receive $719.42 each month for 180 months, resulting in a total payment of $129,496.20 over the 180 month span. **The funds will first be distributed to administrative claims and priority claims and the remainder will be paid pro-rata to general unsecured creditors.**

# IX. DISPOSABLE INCOME ANALYSIS

| Source | Amount |
|---|---|
| Rental Income | $3826.55 |
| Income from Employment | $4777.05 |
| Estimated Income after expenses | $2158.27 |

Pursuant to § 1129(a)(15) of the Bankruptcy Code, the Court shall confirm the Plan only if: in a case in which the debtors is an individual and in which the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, what the holder of such Allowed Unsecured Claim shall receive under the Plan is either (a) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Allowed Unsecured Claim is not less than the amount of such Allowed Unsecured Claim, or (b) the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

Section 1325(b)(2) defines disposable income as current monthly income received by the Debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonable necessary to expend (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The Debtor provided a calculation of their current monthly income with their Bankruptcy Schedules. Pursuant to that statement, the Debtor's current monthly income is $8,344.56.00. According to the Debtor's Schedule J, which identifies the Debtor's necessary expenses, the Debtor's expenses are $8,964.20 on a monthly basis. However, Debtor, through income generation has turned his financial situation into one which will yield disposable income. Debtor has provided a comprehensive breakdown of his monthly payments (docket 38) which illustrates his ability to properly fund his plan. As noted above, Debtor will provide $129,496.20 to general unsecured creditors over the fifteen year plan commitment period.

Debtor has been in negotiations with his secured creditors and it is evident that agreements will be reached with all three and there will be additional unsecured claims. To the extent there are such claims; Debtor will make payments to the post-petition bifurcated claims in an amount no less than $129,496.20.

Debtor has supplied an excess cash flow summary which shows his ability to fund the plan. While Schedules I and J show negative disposable income, those figures are derived using pre-petition mortgage payments (the excess cash flow analysis uses figures based on the new agreed upon values in this plan) and not the lowered payments that Debtor will be paying once the plan is confirmed. Thus, while Schedules I and J show negative income, the analysis makes it clear Debtor has the ability to fund the plan. Furthermore, the new secured debt payments obviously render the I and J figures moot.

## X. EFFECT OF CONFIRMATION

Because the Debtor is an individual, pursuant to § 1141(d)(5) of the Bankruptcy Code. Confirmation of the Plan does not provide the discharge for the Debtor. The Debtor will move for the entry of a final decree after the Debtor has provided for the implementation of the Plan, and the final decree will contain the language providing the Debtor his discharge and such final decree will discharge any and all debts of the Debtor, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d) of the Bankruptcy Code. The discharge shall be effective as to each

Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Obligations of the Debtor, and those New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## XI. IMPLEMENTATION AND FUNDING OF DEBTORS' PLAN

The Plan will be funded by the Debtor's post-petition earnings and Excess Cash Flow. The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of his Plan and the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of the necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## XII. TAX CONSEQUENCES

Pursuant to § 1125(a)(1) of the Bankruptcy Code, the Debtor is to provide a discussion of the potential material federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of

additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtor nor his lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors. Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtor does not have to recognize income from the discharge of indebtedness. The Plan contemplates significant discharge of indebtedness; however, because the Debtor is in bankruptcy, they will not have to recognize the discharge of indebtedness as income for tax purposes. The Debtor does not believe the Plan will cause any adverse tax consequences.

## XIII. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, priority, or administrative, shall include any fine, penalty, exemplary or punitive damages, late charges, or other monetary charge relating to or arising from any default or breach by Debtor, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

## XIV. EXECUTORY CONTRACTS

Assuming the Debtor retains ownership of the related real property, the Debtor assumes the leases with the tenants relating to the real property (and if the Debtor does not retain ownership then the Debtor rejects the lease of the related real property), and assume all executory contracts and unexpired leases in Schedule G of the Debtor's Bankruptcy Statements. Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than 10 days after the earlier of Confirmation or the date the executory contract or

unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XV. VOTING PROCEDURE

The Plan divides the claims of creditors and of interest-holders into separate classes. All classes of claimants are encouraged to vote; however, only the vote of the holders of claims that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes creditors who, under the Plan, will receive less than payment in full of their claims on the Effective Date of the Plan.

All creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot, which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with § 1125 of the Bankruptcy Code, and is provided to each person whose claim or interest has been scheduled by the Debtor, or who has filed a proof of claim or interest with respect to the Debtor or his property, each known equity interest holder and other parties in interest known to the Debtor. The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of creditors will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and liquidation, or who has timely filed with the Court a proof of claim or proof of interest.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for confirmation under the Bankruptcy Code have been met and whether the Plan has been accepted by each impaired class and by the requisite number of creditors in such class. Under § 1126 of the Code, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than on-half (1/2) in number of the allowed claims of class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by

an impaired class, the Court must also determine that class members will receive at least as much as they would if the Debtor was liquidated under Chapter 7 of the Code.

Even if each class of creditors does not accept the Plan, the Plan ca be confirmed under § 1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing their collateral and disposing of it in commercially reasonable manner with no obligation to unsecured creditors.

## XVI. MODIFICATION OF PLAN

In addition to the modification rights under § 1127 of the Bankruptcy Code, the Debtor may amend or modify their Plan at any time prior to Confirmation without leave of the Court. The Debtor or the Reorganized Debtor may propose amendments and/or modifications of their Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor or the Reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XVII. CLOSING OF THE CASE

If the Court does not close this case on its own motion, the Reorganized Debtor will move the Court to close this case on the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtor will be responsible for filing pre and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XVIII. RENTENTION OF JURISDICTION

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Un-liquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c )(1) upon request of the Debtor or any holder of a Contingent or Un-liquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of he date of Confirmation, between the Debtors and ny other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5. The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of the Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitation, restriction, terms and conditions of such title, right and power that this Court may deem necessary.

8. The entry of an order concluding and terminating this case.

**XIX.  DISCLAIMER**

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof.

Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XX.    RISKS

The risk of the Plan lies essentially with the Debtor's ability to maintain their income to make plan payments.

## XXI.    PROPONENTS RECOMMENDATION/ALTERNATIVES TO THE PLAN

The Debtor recommends that all creditors entitled to vote for the Plan do so.  The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee.  Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses take priority over the payment of unsecured claims without priority.  In other worse, conversion would likely decrease the net amount available to pay currently existing creditors.  Further, a Chapter 7 proceeding would not provide the Debtor with the means to pay their Priority Claims over time.

In addition, conversion could substantially delay any distribution to creditors beyond the time period for distribution defined in the Plan.  A Chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors.  It is not unusual for distributions in Chapter 7 cases to be delayed for years.  Moreover, the return on the assets of the Estate a trustee is likely to obtain through a standard Chapter 7 liquidation could be less than the return the Plan will generate.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts.  Moreover, outside the context of a bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors.  In addition, dismissal of this case would open the door for the Debtor to file a new bankruptcy case, which would further delay or reduce funds available to pay creditors.

For all these reasons, the Debtor urges you to vote to accept the Plan and to return your ballots in time to be counted.

RESPECTFULLY SUBMITTED this 29 day of June 2010.

**The Law Offices of Nasser U. Abujbarah**

<u>/s/ Nasser U. Abujbarah</u>

Nasser U. Abujbarah
The Law Offices of Nasser U. Abujbarah
7025 E. McDowell Road, Ste. 9
Phoenix, Arizona 85257

Filed this 29th day of
June 2010 with:

The US Bankruptcy Court,
District of Arizona

COPY of the foregoing
Mailed this 29th day of
June 2010 to:

The Office of the US Trustee
230 North 1st Ave., #204
Phoenix, Arizona 85003

The Honorable George B. Nielsen
Judge of the US Bankruptcy Court
230 North 1st Avenue
Phoenix, Arizona 85003

Foster J. Rizopoulos
20333 NW Anzalone Drive
Apt # 154
Hillsboro, Oregon 97006

By <u>Fernando Figueroa</u>